

# NUMBER 13-08-00456-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**NATHANIEL OTTO,**                                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                               **Appellee.**

---

### On appeal from the 117th District Court of
### Nueces County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Garza
### Memorandum Opinion by Justice Yañez

Appellant, Nathaniel Otto, was convicted of two counts of aggravated sexual assault

of a child[1] (counts one and two), one count of sexual assault of a child[2] (count three), and

---

[1] *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2009).

[2] *See id.* § 22.011 (Vernon Supp. 2009).

two counts of prohibited sexual conduct[3] (counts four and five). Otto received three sentences of twenty years' confinement for counts one, two, and three and two sentences of ten years' confinement for counts four and five, with all five sentences running concurrently. By ten issues, Otto claims that the evidence is legally and factually insufficient to support his conviction. We affirm.

## I. BACKGROUND

A.O., Otto's sister, made allegations that he sexually abused her. Otto was then charged with two counts of aggravated sexual assault occurring on or about July 1, 2000 and July 1, 2001; one count of sexual assault of a child occurring on or about October 21, 2002; and two counts of prohibited sexual contact occurring on or about October 21, 2002 and December 1, 2005.[4] Specifically, the State alleged that Otto committed the two counts of aggravated sexual assault of a child by intentionally or knowingly causing A.O.'s sexual organ to contact Otto's sexual organ when A.O. was younger than fourteen years old. The State alleged that Otto committed sexual assault of a child by intentionally and knowingly causing A.O.'s sexual organ to contact Otto's sexual organ when A.O. was younger than seventeen years old. Finally, the State alleged that Otto committed two counts of the offense of prohibited sexual conduct by engaging in sexual intercourse with A.O., a person he knew to be his sister. After a trial, the jury found appellant guilty of all five counts. Otto was sentenced to twenty years' confinement for each count of aggravated sexual assault of a child and sexual assault of a child and to ten years' confinement for each count of

---

[3] *See id.* § 25.02 (Vernon Supp. 2009).

[4] Originally, the grand jury indicted Otto for eleven separate offenses; however, the State eventually dropped six of those charges.

prohibited sexual conduct.  This appeal followed.

## II. THE EVIDENCE

### A.  Corina Benavides

Corina Benavides, a social worker at Driscoll Children's Hospital ("Driscoll"), testified that A.O. went to the emergency room at Driscoll for a suicide attempt and depression. A.O. was eighteen at the time.  Benavides stated that her duties include taking an initial assessment of any child that comes into the hospital for issues concerning abuse, neglect, depression, or mental health.[5]  Benavides testified that A.O. told her that she had been "sexually abused" by Otto on a regular basis from the age of five.  According to Benavides, A.O. told her that the "sexual abuse" had been "consistent up until about a month or two prior to her suicide attempt" and that "the abuse was violent in the sense that [Otto] would be physically aggressive during their sexual acts."  Benavides testified that A.O. explained that Otto would "hold her down" and "penetrate her vaginally."  Benavides stated that A.O. told her that Otto would forcibly have sex with A.O. on many occasions and that he threatened to "beat her up" if she told anyone about the "sexual abuse."  Benavides described A.O. as being terrified and scared of Otto's reaction and stated that by the end of her interview, A.O. was upset and tearful.

On cross-examination, Benavides stated that A.O. told her that she never reported the alleged abuse to her parents.  According to Benavides, A.O.'s parents reported that A.O. had hallucinations and her mother, Caroline Otto, stated that she was "concerned" about the allegations because of A.O.'s recent behavior.  On re-direct examination,

---

[5] Benavides stated that the hospital takes patients from infancy to the age of twenty-one.

Benavides clarified that A.O.'s mother was "reluctant" to believe A.O.'s allegations against Otto because of A.O.'s recent suicide attempt and hallucinations. Although A.O. told Benavides that she had hallucinations and heard voices, A.O. denied hearing voices or hallucinating during her interview with Benavides. Benavides testified that she did not believe that A.O. was lying or that A.O. was hallucinating.[6] According to Benavides, A.O. displayed "the typical reactions of a teenager who had been sexually abused."

**B. A.O.**

A.O., who was twenty years old when Otto's trial was held, testified that she currently lived in Corpus Christi, Texas with her parents and that four years prior to the trial she lived in Flour Bluff, Texas with her parents and Otto. Caroline began home-schooling A.O. when A.O. entered the ninth grade.[7]

The State asked A.O. if she had "some problems with some medication," and A.O. stated that she had thoughts of suicide and hallucinations, such as hearing voices. When asked if she remembered telling someone at Driscoll that Otto had sexually abused her, A.O. responded that she did. The State asked, "Now, this sexual abuse by your brother, had this been happening for a lot of years? Did it start when you were a little girl", and A.O. replied, "Yes, ma'am." Then the following exchange occurred:

> [The State]: And did it go on until maybe a month or so before you went to the hospital?
>
> [A.O.]: Well, just off and on.
>
> [The State]: But the last time that it happened was probably about a month

---

[6] The trial court allowed Benavides's testimony after overruling defense counsel's objection.

[7] Caroline also home-schooled Otto.

4

or so before you went to the hospital?

[A.O.]: No, ma'am, but it was more months than that.

[The State]: But it had been going off and on for a long time, until you were about how old?

[A.O.]: Well, when I went to the hospital, I was 18.

[The State]: Um-hum. So, had it happened when you were 18?

[A.O.]: (Pause) Yes, ma'am.

[The State]: Had it happened when you were 17?

[A.O.]: (Pause) Once, maybe.

[The State]: Had it happen [sic] when you were 16?

[A.O.]: (Pause) Yes, ma'am.

[The State]: What about when you were 15?

[A.O.]: (Pause) Maybe. I'm not sure.

[The State]: And what about when you were younger than that, did it happen when you were younger than that?

[A.O.]: Yes, ma'am.

[The State]: So, it happened more than one time; is that right?

[A.O.]: Yes, ma'am.

[The State]: Now, I'm gonna ask you specifically about some of the things that happened. Was there ever a time that your brother's private touch [sic] your private?

[A.O.]: (Pause) Maybe.

[The State]: Was there ever a time that he rubbed his private on your private?

[A.O.]: (Pause) Not exactly, but, yes.

5

[The State]: And did that happen more than one time?

[A.O.]: Yes, ma'am.

[The State]: Was there a time that, actually, his private part went into your private part just a little bit?

[A.O.]: I'm not really sure, but, you know, I felt a poke that hurt a lot.

[The State]: And when you say you're not really sure, is it because you didn't see it happen?

[A.O.]: (Pause) Uh, so the—Yes, but, no . . . I mean. . . (Pause)

[The State]: (Pause) I know that it's something that you don't wanna talk about. Do you remember telling me that one time it went in just a tad and that you felt a poke and you had never felt anything like that before.

[A.O.]: (Shakes head).

[The State]: Could you answer in words?

[A.O.]: (No response).

[The State]: You were nodding your head, yes. Can you say the words, so that she can type down what you're saying.

[A.O.]: It was (pause)—I think a sting.

[The State]: It was a sting? And did that happen one time or more than one time?

[A.O.]: Once.

A.O. then stated that Caroline did not believe her allegations and asked her to recant them. A.O. testified that she wanted to "drop" the charges because she did not want Otto to get in trouble. A.O. stated that her mother asked her to "take back" the things she said Otto did to her once. The State asked, "Did your mom ever write a letter saying she was you, asking [the State] to drop the charges," and A.O. responded, "Um, (pause) she asked

6

me about it and I said, 'whatever,' 'cause I did want to drop. . . .'" A.O. agreed that she did not want to tell the jury what had happened. Then the following colloquy occurred:

[The State]: So, what you told the jury, let me be sure I understand, is that these things happened over a long period of time, but it happened almost every year. From about how old?

[A.O.]: Five.

[The State]: And there were times that you said that his private would touch your private?

[A.O.]: (No response).

[The State]: It would be up against your private part?

[A.O.]: (Pause) Not exactly.

[The State]: What do you mean by that?

[A.O.]: (Pause) Just not—not that.

[The State]; If—if you used your hand, could you show us what—what did happen, with one hand using the other hand?

[A.O.]: (Indicating) Just above.

[The State]: Above your private? But it would be his private above your private?

[A.O.]: (Shakes head).

[The State]: And then you talk about that one time that you felt a stinging.

[A.O.]: (Shakes head).

. . . .

[The State]: Can you—can you use a word? She can't take down our head nods. Can you say—You were nodding your head, yes, is that right?

[A.O.]: Yes, ma'am.

7

A.O. testified that the "stinging" happened when they lived in Flour Bluff and that she was about thirteen or fourteen years old when it happened. A.O. stated that the sexual abuse also occurred when she lived in Corpus Christi a few times, but she did not elaborate. According to A.O., she informed Caroline that something had happened with Otto but "not the whole thing," and Caroline said she would talk to Otto. A.O. also stated that she thought she had told her mother about it three times, but that she was not really sure. A.O. testified that her parents do not believe the allegations against Otto.

On cross-examination, defense counsel asked, "[A]t one point you signed a, what we call a 'nonprosecution affidavit,' is that correct? Do you know what that is? That is a . . . that's a document saying that these things never happened and you would like the state to dismiss the charges. Do you remember signing that?" A.O. replied, "Yes, I think so." A.O. stated that she could not remember the date she signed the document and that she does not "remember months." A.O. testified that she signed the document voluntarily and that it states that the allegations made by the State against Otto did not occur.

According to A.O., she had an adverse reaction to some medication and suffered from hallucinations on possibly two occasions. A.O. admitted that she had thoughts of suicide, but denied attempting suicide. When defense counsel asked if A.O. remembered telling Benavides that she had never told Caroline that Otto had sexually abused her, A.O. replied, "Um, I told her I had told her, but I told her, no, I hadn't told her the whole—the whole thing." Defense counsel asked if A.O. told Benavides the truth and A.O. responded, "Um, I did tell her the truth. It's just I didn't go into detail." When asked if Otto touched her private parts over her clothing, A.O. said, "Sometimes."

On re-direct examination, A.O. stated that she signed the nonprosecution affidavit

because she never said the "things" stated in the indictment. The State asked, "You never said that on or about a certain date, [Otto] did then and there intentionally or knowingly cause your sexual organ to contact his sexual organ, you never said those things, did you?, A.O. replied, "No, ma'am." And when the State asked if what she "told the jury about here and the stuff about the sexual contact that you and [Otto] had, where [Otto] actually contacted your private part with his private part, and did a lot of other things over a lot of years, is that the truth . . . ?", A.O. replied, "Yes, ma'am."

## C. Sergio Ramirez

Sergio Ramirez, a detective with the Corpus Christi Police Department, testified that he interviewed A.O. and Otto.[8] Detective Ramirez stated that A.O. was crying and "getting sick to her stomach" when she told him about what Otto had done to her. A.O. told Detective Ramirez that when she was about five years old and Otto was seven years old, Otto began having "sexual intercourse with her against her will and it went on through many, many years" and that it happened more than fifty times. On cross-examination, Detective Ramirez clarified that it was not "full-fledged sexual intercourse" when A.O. was five, but it was "touching." Detective Ramirez stated that A.O. recalled an incident, when she was thirteen, where Otto went into her bedroom, began touching her, and "feeling around her vagina with his penis." According to Detective Ramirez, A.O. said, "He punctured my vagina just a tad" and she told him that about two months prior to his interview with her, Otto had been "feeling around [her sexual organ] with the penis and his fingers." The State asked, "And, of course, she did indicate that that happened on numerous occasions, but

---

[8] Otto testified that he was twenty-two years old.

9

she gave you details of a few?" Detective Ramirez replied, "Correct."

Detective Ramirez testified that when he interviewed Otto, "there was a lot of denial" and then "it got to a certain point where he said yes, you know, there was a lot of incidents, contact, touching and things like that." The State asked, "Did you find that the [offenses] involved sexual contact with a child under the age of 14?" and Detective Ramirez answered, "Yes." The State asked "Did you also find that there was sexual contact with a child under the age of 17?" Detective Ramirez replied, "Correct."

## D. Otto's Interview with Detective Ramirez

The State played a videotaped recording of Otto's interview with Detective Ramirez in its entirety.[9] In the video, Detective Ramirez outlines three incidents that A.O. described to him. First, A.O. told Detective Ramirez that Otto first sexually abused her when she was five years old. The second incident occurred when A.O. was thirteen, and Otto rubbed his penis on her vagina and "accidently" penetrated her vagina. Finally, A.O. stated that the third incident happened a few months before A.O. went to Driscoll. A.O. told Detective Ramirez that two-and-a-half to three months prior to the interview, she and Otto had sex. Detective Ramirez informed Otto that A.O. had said that she has been having sex with Otto "for years."

Otto stated that A.O. had recent mental issues and claimed that she would "stare" at the television set and laugh, which was "scary." In response to the described incidents, Otto stated that he did not know what A.O. was talking about and that it was "sick." In

---

[9] During the trial, Otto objected to the video on the basis that his statement was involuntary due to coercion. The trial court found that Otto's statement was voluntary and admitted the video into evidence. On appeal, Otto does not challenge the admission of the video.

response to questioning about the alleged sexual abuse, Otto recalled an incident occurring five or six years prior to the interview, when he heard his father say that A.O. was in Otto's bed with her pants down. However, Otto asserted that he did not witness the incident because he was in the bathroom.

When Detective Ramirez asked Otto about A.O.'s allegation that he sexually abused her when she was five years old, Otto stated that he did not remember that happening. However, Otto later remembered that when he was seven, his parents asked him if he had ever touched A.O. and that he had said, "No." In the video, Otto denied the allegations and stated that "it" never happened. Detective Ramirez also relayed A.O.'s statement that Otto forced her to engage in the sexual encounters, that he had sex with her three months prior to the interview, and that it happened a lot. According to Detective Ramirez, A.O. claimed that it happened more than ten times; however, it was not always "the whole sexual intercourse" and sometimes was only touching and fondling. Otto told Detective Ramirez that it never happened.

After Detective Ramirez told Otto that he did not believe him, Otto stated that he was "willing to admit" that he does not remember what happened when he was seven years old and maybe something did happen then. Otto reiterated that nothing happened except with "a huge question mark" over the incident when he was seven. When Detective Ramirez asked Otto what he believed happened when A.O. was five and he was seven, Otto stated that he did not know. Detective Ramirez asked Otto if there was a time that he "experimented" with A.O., and Otto replied, "probably" one time that he could remember when A.O. was eight years old. Otto stated that all he could remember was that A.O. had a belt. Detective Ramirez asked if the experimentation was sexual, and Otto said, "No."

11

Detective Ramirez then asked Otto if he remembered getting on top of A.O. and "rubbing" her when she was thirteen. Otto did not respond. Otto then stated that he believed that he has had enough punishment for "something" that happened ten or thirteen years ago. Otto also explained he was involved with the church and asked Detective Ramirez to imagine if something he had done when he was "a little kid" resurfaced. Detective Ramirez stated that Otto had concerns about revealing what happened, but that Otto was no longer saying it did not happen. Detective Ramirez then said, "So, obviously something happened" and "By not telling me, you're telling me something happened." Otto appears to agree with Detective Ramirez. Otto then mentions that he may want to "cut a deal" and that he was "balancing the risks."

Detective Ramirez again asked Otto what happened when A.O. was thirteen years old, and Otto replied, "I'm weighing the risks. Fifteen and thirteen." When Detective Ramirez again asked Otto what happened, Otto replied, "I'll give you the experimenting, but nothing else." Detective Ramirez asked Otto "What experimenting?" and Otto said, "Everything that's down there . . . except for the last one," clearly referencing Detective Ramirez's report.[10] Otto clarified that the "last one" was the incident that A.O. claimed occurred a few months prior to the interview. Otto then stated that the last time it happened was when A.O. was thirteen. Detective Ramirez asked, "What happened?" and Otto said, "God forgive me . . . every time it happened it was consensual. When she said enough, it was enough." Otto denied that there was kissing, penetration of A.O.'s vagina with his penis, or oral sex, but agreed that there was "fondling and touching" with their clothes on.

---

[10] Detective Ramirez's report is not part of the record.

Otto stated that "things" happened "too many times" and when Detective Ramirez asked him to give a number, Otto stated that it happened more than once and more than five times. Detective Ramirez again stated that A.O. said that Otto "rubbed" his penis "between [A.O.'s] legs" and vagina and his penis penetrated her vagina. Detective Ramirez asked what Otto remembered about that incident and Otto replied, "I don't." Otto claimed that they did not take off their clothes.

When Detective Ramirez asked, "How did you rub your penis on her vagina," Otto replied, "the zipper." Detective Ramirez asked, "Just through the zipper," and Otto nodded his head in agreement. Otto stated that when A.O. told him to stop and leave, he did and that he did not know why A.O. claimed there was penetration. When asked if there was ejaculation, Otto replied that he was not sure. When Detective Ramirez asked if the encounters were consensual, Otto said that "No was no." When asked to elaborate about how the encounters began, Otto explained that he would be watching movies with A.O. and "whatever." Detective Ramirez stated that he understood that they were watching movies but inquired as to whether he started touching A.O. or "feeling her out." Otto replied, "I guess. Yeah." Otto explained that "after that," A.O. would "grab the top of her pants or whatever." Detective Ramirez asked who would remove A.O.'s pants, and Otto said that no one removed her pants. Detective Ramirez asked if A.O.'s pants were pulled down to her knees, and Otto nodded in agreement.

Detective Ramirez again asked if they had intercourse, and Otto said, "No." Detective Ramirez asked, "What would go on?" and Otto stated that he would "get his mind together," "look down," think "this is not supposed to happen," and then get up and leave. Detective Ramirez asked, "But at that point what was happening already [unintelligible]

13

touching with the penis and the vagina around it, rubbing?" Otto responded "that only happened twice."

Otto stated that the last "incident" occurred when A.O. was thirteen years old. Detective Ramirez asked if during that time there was a lot of rubbing and touching, and Otto said, "Apparently that happened." Detective Ramirez asked Otto if he wore a condom because A.O. had mentioned something about a condom; Otto stated that there was "no need" for a condom. Detective Ramirez asked if Otto did not need a condom because there was only rubbing, and Otto replied, "Yeah." Otto claimed that after the family moved to Corpus Christi, when A.O. attempted to "start something," he would "get up and leave."

### III. STANDARD OF REVIEW AND APPLICABLE LAW

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[11] We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.[12] Instead, we consider whether the jury reached a rational decision.[13]

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly

---

[11] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).

[12] *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

[13] *Beckham*, 29 S.W.3d at 151.

unjust or against the great weight and preponderance of the evidence.[14] This Court will not reverse the jury's verdict unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict.[15]

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge.[16] A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the sexual organ of a child to contact the sexual organ of another person, including the actor, and the victim is younger than fourteen years old.[17] A person commits sexual assault of a child if he intentionally or knowingly "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor."[18] A child is defined as a person under the age of seventeen.[19] A person commits the offense of prohibited sexual conduct if "the person engages in sexual intercourse or deviate sexual intercourse with another person the actor knows to be, without regard to legitimacy . . . the actor's brother or sister of the whole or half blood or by adoption."[20]

## IV. DISCUSSION

By ten issues, Otto challenges the legal and factual sufficiency of the evidence

---

[14] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

[15] *Id.* at 417.

[16] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).

[17] TEX. PENAL CODE ANN. § 22.021(A)(1)(B)(iii).

[18] *Id.* § 22.011(a)(2)(C).

[19] *Id.* § 22.011(c)(1).

[20] *Id.* § 25.02.

15

supporting his convictions for all five counts.

## A. Counts One and Two

### 1. Legal Sufficiency

By his first and second issues, Otto contends that the evidence is legally insufficient to support his conviction for two counts of aggravated sexual assault of a child. Specifically, Otto argues that there is no evidence of a discrete genital-to-genital contact which occurred when A.O. was under the age of fourteen and that A.O.'s "reports of generic undifferentiated acts . . . are insufficient to prove a discrete criminal offense which happened at one discrete moment of time."

A.O. testified that on one occasion when she was thirteen, Otto's "private" was above her "private" and she felt a "sting." Otto acknowledged that his penis touched or rubbed A.O.'s vagina twice and that the abuse ended when she was thirteen. Detective Ramirez testified that A.O. stated that when she was thirteen, Otto went into her bedroom, began "touching" her, "feeling around her vagina with his penis," and that Otto "punctured her vagina just a tad." In the video, Detective Ramirez informed Otto that A.O. said that when she was thirteen years old, Otto rubbed his penis on her vagina and "accidently" penetrated her vagina. In the video, Otto tells Detective Ramirez that he will admit that he and A.O. "experimented," which included everything written in Detective Ramirez's report except for the incident occurring a few months before A.O. attempted suicide. Otto acknowledged that A.O.'s pants were around her knees when the sexual encounters occurred. Otto claimed that the sexual abuse happened when A.O. was between the ages of six and thirteen. From this evidence, the jury could have reasonably inferred that Otto caused A.O.'s sexual organ to contact his sexual organ on two occasions while A.O. was under the age of fourteen.

16

Count one alleged that Otto caused A.O.'s sexual organ to contact his sexual organ on or about July 1, 2000, when A.O. was under fourteen years old. Count two alleged that Otto caused A.O.'s sexual organ to contact his sexual organ on or about July 1, 2001, also when A.O. was under fourteen years old. Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have reasonably found that Otto caused A.O.'s sexual organ to contact his sexual organ when she was under the age of fourteen on two separate occasions. Therefore, the evidence is legally sufficient to support Otto's conviction for counts one and two. We overrule Otto's first and second issues.

*2. Factual Sufficiency*

By his sixth and seventh issues, Otto contends that the evidence is factually insufficient to support his convictions for counts one and two.

First, Otto argues that the convictions are primarily based on A.O.'s uncorroborated testimony. However, the testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault.[21] Therefore, the State did not need to provide evidence corroborating A.O.'s testimony. Furthermore, Otto admitted that he "touched" or "rubbed" A.O.'s vagina with his penis twice when A.O. was under the age of fourteen.

Next, Otto argues that A.O. was unable to recall and articulate the times, places, and

---

[21] TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005) (providing that "[a] conviction under Chapter 21, Section 22.011, or Section 22.021, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred," but if the victim is under the age of seventeen at the time of the alleged offense, "[t]he requirement that the victim inform another person of an alleged offense does not apply"); *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.–Corpus Christi 2006, no pet.) ("The testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault.") (citing TEX. CODE CRIM. PROC. ANN. art. 38.07).

17

nature of the sexual conduct. A.O. did testify that she felt a "sting" when Otto put his private just above her private when she was thirteen or fourteen years old. Furthermore, Otto stated that the "touching" or "rubbing" occurred twice and that the sexual abuse stopped when A.O. was thirteen years old. Next, Otto states that A.O.'s testimony that he began to abuse her when she was five years old is implausible and does not comport with human experience; however, the State did not charge Otto with sexually abusing A.O. when she was five years old. Furthermore, Otto admitted that the sexual encounters occurred when A.O. was between the ages of six and thirteen.

Finally, Otto argues that although the sexual abuse occurred in the family's home, neither parent ever observed the conduct; A.O.'s testimony is contradictory; A.O. "repudiated" her statement to police when she signed and presented the nonprosecution statement to the State; Otto recanted, under oath, the statements he made in the video[22]; Otto's girlfriend and pastor "vouched" for his character; no witnesses were called to vouch for A.O.'s credibility; and Otto denied, under oath, A.O.'s allegations. As the sole judges of the witnesses' credibility and the weight to be given to the evidence, the jury was free to believe some of the testimony and disbelieve other testimony.[23] Here, the jury did not believe Otto's testimony, and instead chose to believe A.O.'s testimony, Benavides's testimony, Detective Ramirez's testimony, and the statements Otto made in the video.

Therefore, viewing the evidence in a neutral light, we conclude that the evidence is

---

[22] At trial, Otto testified that he "merely stated" that the sexual abuse happened after Detective Ramirez promised that A.O. would receive "help" and because he just "wanted to get out of there." Otto denied all of the allegations made against him.

[23] *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

18

not so weak that the jury's verdict with respect to counts one and two seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[24] The evidence is factually sufficient. We overrule Otto's sixth and seventh issues.

## B. Count Three[25]

By his third and eighth issues, Otto contends that the evidence is legally and factually insufficient to support his conviction for count three—sexual assault of a child—because there is "no evidence of a discrete genital[-]to[-]genital incident" occurring when A.O. was under seventeen years old.

Count three alleged that Otto caused his sexual organ to contact A.O.'s sexual organ on or about October 21, 2002, when A.O. was under the age of seventeen. The evidence presented showed that Otto caused his penis to contact A.O.'s vagina on two specific occasions when A.O. was under the age of fourteen. A.O. testified that Otto had sexually abused her "off and on" and that it happened when she was sixteen and under the age of fifteen; however, she did not state what abuse occurred during that period of time. Benavides testified that A.O. told her she was sexually abused on a regular basis by Otto since A.O. was five years old and that Otto penetrated A.O. vaginally and would forcibly have sex with A.O. on many occasions. Otto admitted that the sexual abuse occurred when A.O. was between the ages of six and thirteen.

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have reasonably found that Otto had sex with A.O., and therefore caused his

---

[24] *See Watson*, 204 S.W.3d at 414-15.

[25] Otto refers to count three of the jury charge as count five as it was charged in the indictment; however, we refer to it as count three, as alleged in the jury charge and set forth in the judgment.

penis to contact A.O.'s vagina, when A.O. was under the age of seventeen. Therefore, the evidence was legally sufficient to support the jury's verdict. Furthermore, viewing the evidence in a neutral light, we conclude that the evidence is not so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence to support Otto's convictions for count three.[26] The evidence is factually sufficient. We overrule Otto's third and eighth issues.

## C. Counts Four and Five[27]

By his fourth, fifth, ninth, and tenth issues, Otto contends that the evidence is legally and factually insufficient to support his conviction for counts four and five because the State failed to prove the offense occurred within the applicable statute of limitations. The State responds that Otto has forfeited his statute of limitations argument. We agree.

"[A] statute of limitations claim is a defense" that the defendant forfeits "if it is not asserted at or before guilt/innocence stage of trial."[28] Here, Otto did not raise the limitations defense in the trial court.[29] Therefore, Otto forfeited the defense.[30] We overrule Otto's fourth, fifth, ninth, and tenth issues.

---

[26] *See Watson*, 204 S.W.3d at 414-15.

[27] Otto refers to count four of the jury charge as count eight and count five as count nine, as they were charged in the indictment; however, we refer to them as counts four and five as alleged in the jury charge and set forth in the judgment.

[28] *Floyd v. State*, 983 S.W.2d 273, 274 (Tex. Crim. App. 1998) (citing *Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998)).

[29] A defendant may assert the statute of limitations defense before trial by filing a motion to dismiss under article 27.08(2) of the Texas Code of Criminal Procedure. *Proctor*, 967 S.W.2d at 844. At trial, if there is some evidence before the jury that the prosecution is barred by the statute of limitations, a defendant may assert the defense by requesting a jury instruction on limitations. *Id.*

[30] *See Floyd*, 983 S.W.2d at 274.

## V. CONCLUSION

We affirm the judgment of the trial court.

LINDA REYNA YAÑEZ,
Justice

Do not publish.
*See* TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of July, 2010